UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CARMEN PEREZ-DICKSON,** | : | 3:13cv198 (WWE) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **BRIDGEPORT BOARD OF** | : | |
| **EDUCATION, PAUL VALLAS** | : | |
| **and DR. SANDRA KASE,** | : | |
|     Defendants. | : | |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Carmen Perez-Dickson alleges that defendants Bridgeport Board of Education ("Board"), Chief Administrative Officer Sandra Kase and Superintendent Paul Vallas discriminated against her on the basis of her race and retaliated against her. Specifically, plaintiff's amended complaint alleges racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 against the Board and Dr. Kase; violation of Connecticut General Statutes § 31-51q against the Board; retaliation in violation of 42 U.S.C. §§ 1981 and 1983 against Dr. Kase, Superintendent Vallas and the Board; retaliation in violation of the Connecticut Fair Employment Practices Act ("CFEPA") against Dr. Kase and Superintendent Vallas; and racial discrimination in violation CFEPA against Dr. Kase and Superintendent Vallas.

This case was removed from state court on the basis of federal question jurisdiction.

Defendants have filed a motion for summary judgment on the third amended complaint, which has been determined by Court Order [doc. #94] to be the operative

1

complaint.[1]  For the following reasons, the motion for summary judgment will be granted.

## BACKGROUND

The parties have submitted statements of facts with evidentiary materials that reveal the following undisputed facts.[2]

Plaintiff commenced her employment as an administrator with the Bridgeport Board of Education in 1989.  At the time relevant to this action, plaintiff served as the Principal of Jetti Tisdale Elementary School in Bridgeport, Connecticut.

Prior to filing this action, plaintiff filed a lawsuit in state court against the Bridgeport Board of Education, the former assistant superintendent, and the former acting superintendent alleging that she was subject to a harassment in retaliation for exercise of her constitutional speech rights and in violation of two statutes that prohibited discipline in certain circumstances, and racial discrimination pursuant to Section 1983.  Plaintiff prevailed at trial but the Connecticut Supreme Court reversed the verdict. See Perez-Dickson v. City of Bridgeport, 304 Conn. 483 (2012).

---

[1] Plaintiff requests this Court to consider an additional claim of suspension.  The Court will deny this request.  After the Court determined that the third amended complaint was the operative complaint, plaintiff was given leave to amend the complaint by December 18, 2014, but plaintiff failed to do so.  Thereafter, this Court denied plaintiff's untimely attempt to amend the complaint.

[2] Plaintiff moves for this Court's permission to depose Dr. Kase.  However, this Court has already generously extended the discovery deadline.  On December 11, 2014, the Court extended the discovery deadline to January 30, 2015, provided the parties schedule depositions by December 31, 2014.  Plaintiff failed to timely schedule Dr. Kase's deposition.  Magistrate Judge Fitzsimmons denied plaintiff's subsequent request to depose Dr. Kase.  Plaintiff's instant request to depose Dr. Kase will be denied.

On July 9, 2012, Dr. Kase placed plaintiff on paid administrative leave after she learned of two videos taken on the Tisdale School's security cameras. These videos showed plaintiff dealing with students in two incidents.

A video from March 16, 2012 showed plaintiff "sliding" a student out from under a table, grabbing the students's left leg and pulling the student into the hallway. When the student refused to stand up, plaintiff picked the student up and carried her a few steps before putting her down. After the student stood up, plaintiff walked behind the student with a hold on the back of the student's coat. A video from March 23, 2012 showed plaintiff approaching a student who was crawling on top of, and under, couches. When the student refused to stand up and walk with plaintiff, plaintiff held the student by the left arm and slid her down the hallway by the arm.

After reviewing the videos, Dr. Kase notified plaintiff by letter that she was required to discuss the incidents depicted in the two videos at a meeting scheduled for July 9, 2012. Dr. Kase also contacted the Department of Children and Families ("DCF") pursuant to her obligations as a mandated reporter under the Connecticut General Statutes § 17a-101a.

On July 9, 2012, Dr. Kase heard but was not satisfied with plaintiff's explanation of the incidents shown in the two videos. Plaintiff was subsequently placed on a paid administrative leave of absence pending an investigation by the school district and DCF. In a letter dated July 9, 2012, Dr. Kase informed plaintiff that her leave would continue pending an investigation by the DCF and/or the school district.

3

In a letter dated July 30, 2012, plaintiff wrote to Superintendent Vallas about her administrative leave and the "benign neglect" that caused "minority students" to fail:

> The inability of school administrators to effectively handle children who are disciplinary problems adds to the instability of classrooms, the entire school and to the education system in general. All of the organizational changes, budget trimming, and other policy changes that are being put into place will all be in vain if outcomes in the classroom are undermined when administrators are threatened with suspension for attempting to maintain order and discipline.

Dr. Kase conducted an investigation by interviewing plaintiff, Tisdale School security guards, Assistant Principal Charmaine Worthy, the school social worker, teachers and paraprofessionals at the Tisdale School. She also reviewed documents and surveillance video from the Tisdale School. During her investigation, Dr. Kase learned about the existence of a Tisdale School security video recorded on February 9, 2012, that showed plaintiff sliding another student on the hallway floor. This video was also forwarded to DCF for investigation.

By letter dated August 29, 2012, Dr. Kase informed plaintiff that the February video had been discovered and that plaintiff should meet with her on September 4, 2012 to discuss the incident.

On August 15, 2012, DCF issued its report substantiating the allegations against plaintiff of "Physical Neglect;" allegations of physical abuse and emotional abuse were not substantiated.

In a letter dated November 19, 2012, Dr. Kase advised plaintiff that she had learned about allegations that plaintiff had hit her desk with a baseball bat in the presence of a language-impaired student; slid another child who hit his head on a

4

doorway during this process; struck a child in the head; and used school funds to hire a relative for work at the school. The letter requested that plaintiff discuss these allegations on November 29, 2012.

Due to plaintiff's inability to attend the meeting on that day, Dr. Kase offered to reschedule the meeting to December 20 or 21, 2012. Plaintiff's counsel was not available on those dates, and the meeting was eventually held on February 1, 2014.

At that meeting, plaintiff provided Dr. Kase with a satisfactory explanation about the use of school funds to hire a relative to work at the school. However, based upon the results of the School District's investigation and that of the DCF investigation, Dr. Kase recommended to Superintendent Vallas that plaintiff's employment contract be terminated. In a letter dated April 2, 2013, Superintendent Vallas notified plaintiff that termination of her employment contract was under consideration.

Plaintiff filed a claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging discrimination and retaliation pursuant to Title VII and CFEPA.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against

the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Racial Discrimination Claims in Violation of Sections 1981 and 1983

Plaintiff asserts that defendants subjected her to disparate treatment on account of her race. Defendants argue that plaintiff cannot maintain her Section 1983 claims against state actors who have not acted outside the scope of their duties, cannot establish municipal liability, and cannot establish a case of racial discrimination sufficient to survive a motion for summary judgment.

Racial discrimination claims pursuant to Section 1983 are analyzed pursuant to the same standards as Title VII. Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999). To establish her prima facie claim of racial discrimination based on disparate treatment, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although this initial burden is not onerous, plaintiff must show that the adverse employment action was not made for legitimate reasons. Thomas v. St. Francis Hospital and Medic. Ctr., 990 F. Supp. 81, 86 (D.

Conn. 1998).

If the plaintiff establishes a prima facie case, defendants must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. Each plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Defendants assert that plaintiff cannot establish that she suffered an adverse employment action based on being placed on paid administrative leave. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be materially adverse, the change in working conditions must be more than disruptive than a mere inconvenience or alteration of job responsibilities. Parrott v. Karsicky, 2014 WL 2207382, *2 (D. Conn. 2014). "Examples of materially adverse employment actions include, *inter alia,* termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006). The test for material adversity is objective based on the reaction of a reasonable employee. Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011).

Numerous courts have held that paid administrative leave pending an investigation does not constitute an adverse employment action. See Joseph, 465 F.3d at 90 (citing cases). These cases have reasoned that an "employee does not suffer a

7

materially adverse change in the terms conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." Id. at 91.

In this instance, the Court need not determine whether her placement on paid administrative leave represented an adverse employment action because plaintiff cannot establish a prima facie inference of discrimination. An inference of discriminatory intent may be drawn if an employee shows direct evidence of such intent, or if she demonstrates that she was subjected to disparate treatment compared to persons who were not members of her protected class but who were similarly situated in all other material respects. Gaymon v. MTA Bus Co., 2015 WL 1014067, at *4 (E.D.N.Y. Mar. 6, 2015). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010). The Court cannot assess the similarity of unnamed individuals or individuals about whom the Court lacks sufficient information.

In support of her proof that individuals outside of her protected class were treated more favorably, plaintiff has submitted the affidavit of an 11-year old student who describes an incident in which an "Alix Ortiz" grabbed students and pushed a student to the floor, and another incident in which a teacher swore at the student, telling him that she hoped he would get shot. In another affidavit, a citizen of Bridgeport avers that she had heard about a teacher who had sworn at a student and told him that she wished that he would be shot, and heard about a security guard who had emotionally abused the child. The affiant states further that she filed a report to DCF and that she knew that Dr. Kase knew about the facts of the case but had filed no DCF report.

8

Even disregarding issues concerning hearsay, the Court finds that these affidavits fail to raise an inference of disparate treatment. There is no indication that the other individuals were not subjected to any discipline. Further, as defendant points out, none of these individuals is asserted to have engaged in multiple incidents of student mistreatment whereas plaintiff was depicted in videos on three occasions engaged in potential student mistreatment and additionally alleged to have intimidated a special needs child with a baseball bat, hit a child on the head, and caused another child's head to hit a doorway. Additionally, none of these asserted comparators is alleged to be a school principal. Disciplinary action taken against lower level school employees necessarily differs from action taken against a school principal. Accordingly, such individuals cannot be considered comparators; plaintiff has not evinced evidence of any comparators who were engaged in comparable conduct and disciplined less severely.

Nevertheless, even assuming that plaintiff can establish a prima facie case, defendants have a legitimate nondiscriminatory reason for placing plaintiff on paid administrative leave pending investigations into her conduct. The videotapes indicated that plaintiff had engaged in potentially abusive conduct toward students. As previously noted, DCF substantiated a finding of physical neglect against plaintiff. Plaintiff has not adduced evidence raising an inference that defendants placed plaintiff on administrative leave for pretextual reasons. Accordingly, the Court will grant the motion for summary judgment on the claim of racial discrimination in violation of Section 1983.

<u>Retaliation In Violation of Section 1981 and 1983 for Complaining about Racial Discrimination</u>

Plaintiff claims that defendants retaliated against her (1) by placing her on paid administrative leave due to her prior complaint of racial discrimination and (2) by prolonging the duration of her leave due to her July 2012 letter to Superintendent Vallas.

Claims of retaliation in violation of Section 1981 are analyzed under the same standard as Title VII claims.  A prima facie case of retaliation requires plaintiff to show by a preponderance of evidence:  (1) that she engaged in protected activity; (2) that the employer was aware of the activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action.  Once plaintiff establishes a prima facie case, the burden-shifting paradigm of <u>McDonnell Douglas</u>, 411 U.S. 792 (1973) applies.

In the context of a retaliation claim, an employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  <u>Burlington N. and Santa Fe Rail Co. v. White</u>, 548 U.S. 53, 68 (2006).  As <u>Burlington</u> explained, a court considering material adversity should separate significant from trivial harms.

The causal connection between a protected activity and an adverse employment action may be established by direct evidence or by showing the protected activity was closely followed in time by the adverse action.  <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 224 (2d Cir. 2001). Generally, courts have found that a time period of one year between the protected activity and the alleged retaliatory act is too

attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action. See Chang, 254 Fed. Appx. at 840 (no causal nexus based on temporal proximity where alleged retaliation occurred almost one year following protected activity); Deravin v. Kerik, 2007 WL 1029895, *11 (S.D.N.Y. 2007) (collecting cases). Additionally, a plaintiff cannot rely on temporal proximity where "gradual adverse job actions" commenced prior to the protected activity. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 85 (2d Cir. 2001).

For purposes of this ruling, the Court assumes that plaintiff has established a prima facie case. However, as previously discussed, defendants have articulated a legitimate reason for placing plaintiff on administrative leave in light of the need to investigate the conduct revealed in the surveillance videos. Additionally, defendants have set forth that the length of the leave is attributable to scheduling difficulties, investigation into allegations discovered during the investigation, and the DCF investigation. Plaintiff has raised no inference that either justification for the alleged adverse action was pretextual for a retaliatory animus. Summary judgment will be granted in defendants' favor on the claim of retaliation in violation of Section 1981 and 1983.

### CEFPA Racial and Retaliation Claims

Summary judgment on plaintiff's claims of racial discrimination and retaliation in violation of CFEPA is appropriate for the same reasons applied to the federal claims discrimination and retaliation. See Commission on Human Rights and Opportunities v. Echo Hose Ambulance, 156 Conn. App. 239, 250 (March 31, 2015) (federal precedent applies to enforcement of Connecticut employment statutes); Jackson v. Post Univ.,

863 F. Supp. 2d (D. Conn. 2011) (analyzing Section 1981 and CFEPA claims together).

Connecticut General Statutes § 31-51q

The Court will decline to exercise supplemental jurisdiction over the remaining state law claim pursuant to Connecticut General Statutes § 31-51q.  See Donniger v. Niehoff, 642 F.3d 334, 357 (2d Cir. 2011).  In its October 2015 decision, Trusz v. UBS Realty, 319 Conn. 175 (2015), the Connecticut Supreme Court clarified that the governing standard applicable to retaliation claims pursuant to Section 31-51q differs from federal First Amendment analysis.  Thus, it is appropriate that the state court should interpret this recent ruling on state statutory law.   This claim will be remanded to state court.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [doc. #121] is GRANTED on the federal claims pursuant to Section 1981 and 1983 and CFEPA.  The Court declines to exercise supplemental jurisdiction over the claim of violation of Connecticut General Statutes § 31-51q, which should be remanded to the state court.

The Court DENIES plaintiff's requests (1) to have the Court consider allegations related to her suspension and (2) to depose Dr. Kase.

The clerk is instructed to enter judgment in favor of defendants.

/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge

Dated at Bridgeport, Connecticut this _19th_ day of January 2016.